UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
New Haven Division

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
|     Eternal Enterprise, Inc. | : | Case No. 14-20292 (AMN) |
|     *Debtor* | : | |
| Hartford Holdings, LLC | : | |
|     *Plaintiff* | : | Adv. Pro. No. 15-02035 (AMN) |
| v. | : | |
| Goran Mladen | : | |
|     *Defendant* | : | |

Memorandum of Decision and Ruling

Eternal Enterprise, Inc. ("Debtor"), the chapter 11 debtor and debtor-in-possession in the underlying bankruptcy proceedings here, case number 14-20292 (AMN)("Main Case")[1], is the owner and operator of several hundred residential apartments located in multi-family buildings in Hartford, Connecticut. On July 14, 2015, plaintiff Hartford Holdings, LLC ("HHLLC" or the "Plaintiff") – a secured creditor in the Main Case – commenced this adversary proceeding objecting to the Debtor's scheduled representation that it owes an unsecured debt of $54,276.00 (the "Purported Loan") to Goran Mladen (the "Defendant") attributable to monies the Defendant allegedly advanced to the Debtor. AP-ECF No. 1 (the "Complaint").

---

[1] References to the docket of the underlying chapter 11 case, case number. 14-20292 (AMN) appear in the following format: "ECF No. ____." References to the docket of this adversary proceeding, Adversary Proceeding Case Number. 15-02034 (AMN), appear in the following format: "AP-ECF No. ____."

1

In addition to objecting to the Debtor scheduling the Purported Loan as an unsecured debt (the "First Count"), pursuant to Fed.R.Bankr.P. 3007(b), the Complaint further seeks to recharacterize the Purported Loan as an equity contribution pursuant to 11 U.S.C. §§ 105(a) and 502(b)(4) (the "Second Count") or, in the alternative, to equitably subordinate the Purported Loan under 11 U.S.C. § 510(c) (the "Third Count").  After considering the parties' pleadings, memoranda, the relevant documents filed on the docket in this adversary proceeding and the Debtor's Main Case, the arguments and testimony presented during the trial, and for the reasons that follow, the court finds that the Purported Loan should be disallowed in its entirety.

## I.    The Trial

A trial on the Complaint was held on May 23, 2016, *see* AP-ECF Nos. 59 and 60, and concluded on June 8, 2016, *see* AP-ECF No. 65, after which the court took the matter under advisement.  At the request of the parties, the trial was consolidated with *Hartford Holdings, LLC v. Mladen et. al.*, Adv. Pro. No. 15-02034 (AMN) due to the significant overlap in relevant facts.  A separate Order and Opinion for *Hartford Holdings, LLC v. Goran Mladen*, Adv. Pro. No. 15-02034 (AMN) entered on September 16, 2016.

The Defendant, Goran Mladen, was represented by counsel but was not present at the trial.  Defendant's counsel informed the court that he had spoken with Defendant prior to the trial and that the Defendant had represented to him that: 1) he was unavailable to attend; 2) he did not intend to testify regarding his claim against the Debtor; and, 3) he would rely instead on the documentary evidence produced during discovery as well as the testimony of his parents, Vera Mladen and Dusan Mladen, to establish the facts and circumstances relevant to the Purported Loan transaction.  *See* AP-ECF No. 59 at 0:40-

2:45.[2] Both Vera and Dusan Mladen testified regarding their understanding of the alleged loans the Mladen family had advanced to the Debtor.

## II. Jurisdiction, Venue, and Standing

This court has jurisdiction over this action pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b).  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate), (B) (allowance or disallowance of claims against the estate . . . and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 . . .), and (O) (other proceedings affecting debtor-creditor-equity security holder relationships).  This adversary proceeding arises under the chapter 11 Main Case pending in this district; therefore, venue is proper in this district pursuant to 28 U.S.C. § 1409.  The Plaintiff, HHLLC, has standing to seek the relief sought in the Complaint because, as a holder of secured and unsecured claims in the Debtor's chapter 11 case, it is a party in interest within the meaning of 11 U.S.C. § 1109.  Moreover, HHLLC has proposed its own chapter 11 plan that provides for separate classification and disparate treatment of the Mladens' scheduled claim as compared to those of other general unsecured creditors.

## III. Findings of Fact

1. The Debtor is a privately held Connecticut corporation, established in 1997, that owns and operates apartment buildings in Hartford, Connecticut.  *See* Def.'s Answer, AP-ECF No. 18 at ¶6.

---

[2] The court reviewed the audio file of the hearings using VLC Media Player.  All citations to the audio file of a hearing are to the ECF number of the recording and then to the location of the cited testimony as follows: AP-ECF No. ___ at hours:minutes:seconds.

3

2. The Defendant, Goran Mladen, is an individual residing at 488 Porter Street, Manchester, Connecticut. *See* Def.'s Answer, AP-ECF No. 18 at ¶2.

3. On February 19, 2014 (the "Petition Date"), the Debtor filed a voluntary chapter 11 bankruptcy petition. In accordance with 11 U.S.C. §§ 1107 and 1108, the Debtor was and currently remains authorized to continue to operate and manage its business as a debtor and debtor-in-possession. No trustee or examiner has been appointed. *See* ECF No. 1.

4. The Debtor is a "family business" operated by Vera Mladen, Dusan Mladen, their son, Goran Mladen, and other members of the Mladen family. Vera Mladen and Dusan Mladen are married to each other, and Goran Mladen is their adult son.

5. Goran Mladen established the Debtor in 1997. *See* Def.'s Answer, AP-ECF No. 18 at ¶8.

6. Since its creation, ownership of the Debtor has been transferred from Goran Mladen to Dusan Mladen, and, more recently, to Vera Mladen. *See Testimony of Vera Mladen*, AP-ECF No. 71 at 30:10-48:37. According to Vera Mladen's testimony, no other person or entity has ever had an ownership interest in the Debtor. *See id.* Vera Mladen currently owns 100% of the Debtor and has served as president of the Debtor since before the Petition Date.

7. In both its original Schedule F ("Creditors Holding Unsecured Nonpriority Claims") filed on March 21, 2014 as ECF No. 53, and its amended Scheduled F filed on July 22, 2014 as ECF No. 86, the Debtor scheduled the Purported Loan as an unsecured debt in the amount of $54,276.00 that it owed to Goran Mladen. The Purported Loan was not scheduled as disputed, contingent, or unliquidated.

8. In her capacity as president of the Debtor, and under penalty of perjury Vera Mladen electronically signed[3] a declaration verifying the truth and correctness of the Debtor's schedules, including the Debtor's original and amended Schedule F. ECF No. 53 at 31; ECF No. 86 at 5.

9. The deadline for filing proofs of claim in the Debtor's bankruptcy was June 23, 2014. Goran Mladen was not represented individually in the Main Case and did not file a proof of claim in any amount against the Debtor.

10. No document or record was presented during trial documenting the Purported Loan.

11. No document, record or testimony was presented during trial supporting a conclusion that any portion of the Purported Loan had been repaid.

12. At trial, the Defendant offered a single document into evidence to substantiate his Purported Loan to the Debtor. Defendant's Exhibit 2A is a copy of a bank check in the amount of $180,000.00 payable to the Debtor from Goran's Investors, Inc. signed by Goran Mladen and dated December 16, 2004. *See* Def.'s Ex. 2A.

13. Vera Mladen testified that Goran's Investors, Inc. and Goran Mladen both made loans to the Debtor, but did not connect the Purported Loan to the $180,000.00 advanced through Goran's Investors, Inc.:

    **Q:** Are you familiar with a company called Goran's Investors, Inc.?
    **A:** Yes.

    **Q:** And what is that company?
    **A:** It was also a real estate company.

---

[3] Pursuant to Fed.R.Bankr.P. 5005(a)(2), Amended Standing Order No. 7 (IN RE: Electronic Case Filing and Case Management Procedures) authorizes the verification of schedules under Fed.R.Bankr.P. 1008 via electronic signature.

> **Q:** And when you say "real estate company," what do you mean by that?
> **A:** It was a real estate investment company we had in Holyoke, Massachusetts.
>
> **Q:** And who owned Goran's Investors?
> **A:** David Mladen.
>
> **Q:** And were you familiar with the finances of Goran's Investors?
> **A:** Not that much.
>
> **Q:** Do you know if Goran's Investors ever made loans to Eternal?
> **A:** Yes.
>
> **Q:** And how familiar are you with the finances of Eternal?
> **A:** I'm familiar.
>
> **Q:** Do you recall if Goran Mladen ever made loans to Eternal?
> **A:** Yes.
>
> **Q:** Do you know when that occurred?
> **A:** It occurred more than one time.
>
> **Q:** Do you have a ballpark idea of when the loans occurred?
> **A:** No, I would have to check the deposits.
>
> **Q:** Do you have any idea how much was loaned?
> **A:** Not off the top of my head, no.

*Testimony of Vera Mladen*, AP-ECF No. 60 at 52:00-54:31.

14. According to the testimony of Dusan Mladen, the Defendant's father, Goran's Investors, Inc. was a company Dusan Mladen formed to own and manage properties in Holyoke, Massachusetts. *Testimony of Dusan Mladen*, AP-ECF No. 65 at 6:00-11:45.

15. According to a Connecticut Secretary of State Business Filing dated June, 2005, Goran Mladen was President, Secretary, and Director of Goran's Investors, Inc. *See* Pl.'s Ex. 14.  However, neither party presented documentary evidence to

establish the ownership of Goran's Investors, Inc. at the time the $180,000 check was executed.

16. Dusan Mladen further testified that he loaned his personal money to the Debtor through Goran's Investors, Inc.:

    **Q:** What is Goran's Investors?
    **A:** Goran's Investors is a company that I formed, and it was also in real estate management and owning.

    **Q:** And where is that company?
    **A:** That company was operating in Holyoke, Massachusetts.

    **Q:** And when did that company cease to exist?
    **A:** I believe it was like 98, 99.

    **Q:** And when the company stopped existing, who controlled its bank accounts?
    **A:** I did.

    **Q:** And whose money was in those bank accounts?
    **A:** Mine.

    **Q:** And did you ever lend money, your money, to Eternal?
    **A:** Yes.

    **Q:** And did you do that through a check?
    **A:** Yes
    . . .
    [Defendant's counsel approaches the witness with a copy of Def.'s Exhibit 2A]

    **Q:** Do you recognize this document?
    **A:** Yes.

    **Q:** And what is it?
    **A:** It's a copy of a check from Goran's Investors for $180,000.00.

    **Q:** And who was that check made to?
    **A:** Eternal

    **Q:** And what was the purpose of that check?
    **A:** It was a loan.

7

> **Q:** Was that loan ever paid back?
> **A:** No.
>
> **Q:** And whose signature is in the bottom right hand corner?
> **A:** This signature is my son, Goran Mladen, but I authorized him to write the check and to make the loan to Eternal.
>
> **Q:** And whose funds are these?
> **A:** These are my funds . . . together with the operating funds of Goran's Investors.

*Testimony of Dusan Mladen*, AP-ECF No. 65 at 6:00-11:45

17. Although there was no documentary evidence establishing his ownership interest in Goran's Investors, Inc., Dusan Mladen testified that the money advanced through the companies belonged to Vera and Dusan Mladen, and could be transferred between entities without regard to corporate formalities:

> **Court:** Your testimony on direct was that [the money in Goran's Investors, Inc.'s operating account] was "your money." I'm trying to understand what you mean by that.
> **A:** [W]hen I came into the company, when we purchased properties, Goran's Investors was a shell. Nothing. It had no money. So I gave the money. Who gave the 20% or 30% that we needed to purchase properties? I did. . . . So, it's my money. I owned it, so why not?

*Testimony of Dusan Mladen*, AP-ECF No. 65 at 38:34-39:24; *see also* AP-ECF No. 65 at 6:00-23:40.

18. At no point during Dusan Mladen's testimony did he suggest that any portion of the $180,000.00 transferred from Goran's Investors, Inc. belonged to the Defendant. *See Testimony of Dusan Mladen*, AP-ECF No. 60 at 46:56-50:23; AP-ECF No. 65 at 6:00-39:24.

19. Regardless of the contradictory testimony regarding Dusan Mladen's exclusive ownership of the $180,000.00 advanced to the Debtor from Goran's Investor's, Inc., and the complete lack of any documentary evidence to establish that the

Defendant had an ownership interest in Goran's Investors, Inc., counsel for the Defendant attempted to connect the Defendant's Purported Loan to the check from Goran's Investors, Inc.:

**Court:** Is it fair to say that there is no evidence of Goran Mladen contributing money or making loans to Eternal Enterprise? I don't recall any evidence to that effect from any of the testimony.
**Defendant's Counsel:** Your honor, I think that … I'm not going to say that's a fair assessment. I do recall…

**Court:** Let me put it this way: What is the evidence that you presented of Goran Mladen's claim against Eternal Enterprise?
**Defendant's Counsel:** Your honor, I believe that [Dusan] Mladen testified that the majority of the money in [the Goran's Investors, Inc. checking account] was his, but there was some portion of it that was Goran's.

**Court:** I don't recall that testimony. You think [Dusan] Mladen testified to that effect?
**Defendant's Counsel:** I do, and so from that end, whatever that interest is, whatever that number was, should be attributed to Goran Mladen.

**Court:** Was there a precise amount?
**Defendant's Counsel:** There was not, your honor.

AP-ECF No. 65 at 1:02:54-1:04:35.

## IV. Discussion

### a. Applicable Law

Section 1111(a) of the Bankruptcy Code provides that a "proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(a)(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated." 11 U.S.C. § 1111(a). Here, the Purported Loan was scheduled by the Debtor as an unsecured debt that was not disputed, contingent, or unliquidated. By operation of section 1111(a), the Purported Loan was therefore deemed filed as a claim under 11 U.S.C. § 501. Pursuant to 11

9

U.S.C. § 502(a), the Purported Loan would have been deemed allowed but for the objection of HHLLC, a party in interest in the Main Case. Even when a party in interest objects, 11 U.S.C. § 502(b) mandates that the court "shall allow" the claim "except to the extent" that one of the nine conditions of § 502(b)(1)-(9) apply.[4] Of the nine exceptions, only 11 U.S.C. § 502(b)(1) applies in the present case.

Section 502(b)(1) of the Bankruptcy Code provides that a court shall disallow a claim to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). Here, the "applicable law" that determines whether the Defendant's claim is enforceable against the Debtor is a question of state law:

> [W]e have long recognized that the "'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate to state law.'" Accordingly, when the Bankruptcy Code uses the word "claim"—which the Code itself defines as a "right to payment," 11 U.S.C. § 101(5)(A)—it is usually referring to a right to payment recognized under state law. As we stated in *Butner,* "[p]roperty interests are created and defined by state law," and "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." 440 U.S., at 55, 99 S.Ct. 914; accord, *Vanston Bondholders Protective*

---

[4] The Supreme Court summarized the nine statutory exceptions of 11 U.S.C. § 502(b) in *Travelers Cas. and Sur. Co. of Am. v. P. Gas and Elec. Co.* as:
> Those exceptions apply where the claim at issue is "unenforceable against the debtor ... under any agreement or applicable law," § 502(b)(1); "is for unmatured interest," § 502(b)(2); "is for [property tax that] exceeds the value of the [estate's] interest" in the property, § 502(b)(3); "is for services of an insider or attorney of the debtor" and "exceeds the reasonable value of such services," § 502(b)(4); is for unmatured debt on certain alimony and child support obligations, § 502(b)(5); is for certain "damages resulting from the termination" of a lease or employment contract, §§ 502(b)(6) and (7); "results from a reduction, due to late payment, in the amount of ... credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor," § 502(b)(8); or was brought to the court's attention through an untimely proof of claim, § 502(b)(9).

*Travelers Cas. and Sur. Co. of Am. v. P. Gas and Elec. Co.,* 549 U.S. 443, 449 (2007).

> *Comm. v. Green,* 329 U.S. 156, 161, 67 S.Ct. 237, 91 L.Ed. 162 (1946) ("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law").

*Travelers Cas. and Sur. Co. of Am. v. P. Gas and Elec. Co.*, 549 U.S. 443, 450–51 (2007) (some citations omitted).

In the present case, the applicable choice of law rules are those of the forum state, Connecticut. *See, In re Gaston & Snow*, 243 F.3d 599, 602 (2nd Cir. 2001) (enforceability of claims against debtor based on state law required application of choice of law rules of forum state); *but see, In re Coudert Bros. LLP*, 673 F.3d 180, 191 (2nd Cir. 2012) (distinguishing *Gaston* and holding that bankruptcy courts should apply the choice of law rules for the state in which a prepetition complaint was filed under circumstances not present here). Here, the Defendant's claim is based on a Purported Loan, the terms of which, if ever reduced to a writing, were not introduced into evidence at trial. Assuming *arguendo* that the Defendant actually advanced funds to the Debtor, and that the repayment of those funds was governed by an agreement, the Defendant's claim is based on a contract.

As the District Court of Connecticut noted in *Aruba Hotel Enterprises N.V. v. Belfonti*, it is well settled that Connecticut courts apply the "modern" choice of law rules as found in the Restatement (Second) of Conflict of Laws (1971) (the "Restatement"), "which directs courts to adopt the 'most significant relationship' approach when analyzing choice of law issues." *Aruba Hotel Enterprises N.V. v. Belfonti*, 611 F. Supp. 2d 203, 208–09 (D. Conn. 2009) (citing *Am. States Ins. Co. v. Allstate Ins. Co.,* 282 Conn. 454, 461, 922 A.2d 1043 (2007)). Section 188 of the Restatement controls when, as here, there is no choice of law provision in the contact because there is no written contract, and

11

provides that "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6."[5] *See, Allstate*, 282 Conn. at 461 n. 6. Applying the "most significant relationship" analysis to the record of the present case, the court finds that Connecticut substantive law applies.

### b. Burden of Proof

Although the substance of a claim is determined by state law, the Federal Rules of Bankruptcy Procedure supplement the Federal Rules of Evidence to allocate evidentiary burdens when claims that have been deemed filed are challenged. *See* Adv. Comm. Notes to Fed.R.Bank.P. 3001 and Fed.R.Evid. 1101. Federal Rule of Bankruptcy Procedure 3003 provides that claims scheduled by the Debtor are entitled to the same *prima facie* evidentiary effect as those claims for which a properly executed proof of claim is filed:

> The schedule of liabilities filed pursuant to § 521(1) of the Code shall constitute *prima facie* evidence of the validity and amount of the claims of creditors, unless they are scheduled as disputed, contingent, or unliquidated. It shall not be necessary for a creditor or equity security holder

---

[5] Section 6 sets forth seven "overarching considerations in determining which state has the most significant relationship" to the dispute:
> (a) the needs of interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Allstate,* 282 Conn. at 467–68. Furthermore, section 188(2) lists five contacts to be considered in applying the principles set forth in § 6 to a contract dispute:
> (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Id.* at 468.

> to file a proof of claim or interest except as provided in subdivision (c)(2) of this rule.

Fed.R.Bankr.P. 3003(b)(1), *cf.,* Fed.R.Bank.P. 3001(f). Accordingly, the party objecting to the claim – here, the Plaintiff, HHLLC – bears the initial burden of production to provide evidence the claim is legally insufficient, i.e. that it is unenforceable against the Debtor under applicable law. *In re Arcapita Bank B.S.C.(c)*, 508 B.R. 814, 817 (S.D.N.Y. 2014). "To overcome this *prima facie* evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Reilly*, 245 B.R. 768, 773 (2nd Cir. B.A.P. 2000). "The burden then shifts to the claimant, who must 'prove by a preponderance of the evidence that under applicable law the claim should be allowed.'" *In re Arcapita Bank B.S.C.(c)*, 508 B.R. at 817 (quoting *In re Oneida, Ltd.,* 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009)). Ultimately, the claimant always bears the burden of persuasion regarding the allowance of its claim. *See, In re Feinberg*, 442 B.R. 215, 221 (Bankr. S.D.N.Y. 2010).

### c. **Application of the Law to the Facts**

Here, the Plaintiff successfully rebutted any *prima facie* presumption regarding the Defendant's scheduled claim against the Debtor by establishing that any money loaned to the Debtor by Goran Mladen individually was advanced through Goran's Investors, Inc. and that any terms of the Purported Loan were not memorialized in writing. *See, In re Arcapita Bank B.S.C.(c)*, 508 B.R. at 817. This evidence is sufficient to negate an essential representation upon which the Defendant's claim against the Debtor relies - that Goran Mladen personally lent $54,276.00 to the Debtor. *See, In re Reilly*, 245 B.R. at 773. Furthermore, as any terms of the Purported Loan were never reduced to a writing, any enforcement action brought by the Defendant against the Debtor under Connecticut

13

law would likely be barred by the statute of limitations, *see* Conn. Gen. Stat. § 52-576, and the statute of frauds, *see* Conn. Gen. Stat. § 52-550. Accordingly, Goran Mladen bore the burden of proving, by a preponderance of the evidence, that the Purported Loan was enforceable against the Debtor under Connecticut state law.

Goran Mladen failed to establish that the Purported Loan was enforceable against the Debtor under Connecticut state law. At trial, the only testimony in support of the existence of the Purported Loan was presented by Vera Mladen, who did not recall the amount of money loaned or the circumstances surrounding the Purported Loan. *See* Findings of Fact, ¶ 13, *supra*. The only documentary evidence in support of the Purported Loan was a check from Goran's Investors, Inc. for $180,000.00 payable to the Debtor, signed by Goran Mladen and dated December 16, 2004. *See* Def.'s Ex. 2A. Contrary to the theory advanced by Defendant's counsel, Dusan Mladen testified that he alone had an interest in the funds advanced through Goran's Investors, Inc. *See* Findings of Fact, ¶ 16-19. The Defendant provided no evidence to support the theory that his ownership interest in Goran's Investors, Inc. formed the basis of the Purported Loan. *See id.*

Assuming *arguendo* that Goran Mladen did have an ownership interest in Goran's Investors, Inc., and that the $54,276.00 scheduled by the Debtor could be attributable to this interest and the $180,000.00 advance from Goran's Investors, Inc., the Defendant's claim would still not constitute an enforceable debt against the Debtor under Connecticut state law. First, enforcement of the Purported Loan would be barred by the statute of frauds under Connecticut law. Conn. Gen. Stat. § 52-550(a)(6) provides

> No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged:
> . . .

14

> 6) upon any agreement for a loan in an amount which exceeds fifty thousand dollars.

No writing documenting the Purported Loan, scheduled in the amount of $54,276.00, was presented during trial. *See* Findings of Fact, ¶10.

Second, enforcement of the Purported Loan would be barred by the statute of limitations under Connecticut law. *See,* Conn. Gen. Stat. § 52-576 (actions for an account, or on any simple or implied contract must be brought within six years); Conn. Gen. Stat. § 52-576 (action on any express contract or agreement not reduced to writing must be brought within three years). No evidence substantiating any payments on the Purported Loan by the Debtor was presented at trial. *See* Findings of Fact, ¶11. The transfer from Goran's Investors, Inc. to the Debtor was effected on December 16, 2004, over 9 years before the Debtor filed for chapter 11 bankruptcy protection. *See* Findings of Fact, ¶3. Accordingly, the limitations period on any cause of action to collect on the Purported Loan would have lapsed long before the Debtor filed its bankruptcy petition.

## V. **Conclusion and Order**

Based on the scant record here, the court is compelled to conclude that Goran Mladen's Purported Loan is unenforceable against the Debtor under Connecticut state law. After considering the parties' pleadings, memoranda, the relevant documents filed on the docket in this adversary proceeding and the Debtor's Main Case, the arguments and testimony made during the trial, and for the reasons stated above, it is hereby

ORDERED, that HHLLC's objection to the scheduled $54,276.00 Purported Loan advanced by the Defendant is SUSTAINED; and it is further

ORDERED, the Defendant's scheduled claim of $54,276.00 is disallowed as an unsecured claim; and it is further

ORDERED, that judgment on Count One of the Complaint shall enter in favor of the plaintiff; and it is futher

ORDERED, that judgment on Count Two of the Complaint shall not enter in favor of the plaintiff because the relief sought is MOOT; and it is further

ORDERED, that judgment on Count Three of the Complaint shall not enter in favor of the plaintiff because the releif sought is MOOT; and it is further

ORDERED, that the Debtor shall file amended schedules reflecting the effect of this Order by no later than September 30, 2016.

Dated: September 20, 2016
New Haven, Connecticut

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut